## BEFORE THE UNITED STATES JUDICIAL PANEL

## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: SALESFORCE, INC. DATA SECURITY BREACH LITIGATION | **MDL No. 3164** |

### PLAINTIFFS ETHAN ALLISON, AND ARYA SOOFIANA'S, RESPONSE IN OPPOSITION TO MOTION FOR TRANSFER AND CENTRALIZATION PURSUANT TO 28 U.S.C. § 1407

Pursuant to 28 U.S.C. § 1407 and Rules 6.1(c) and 6.2(e) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, Plaintiffs Ethan Allison and Arya Soofiana ("Air France Plaintiffs") in the action *Allison et al. v. Air France*, Case No. 1:25-cv-7634 (S.D.N.Y.), oppose the Motion of Plaintiffs Malcolm Scott, Zenaida Medina, Eliot Canick, Dwhitney Emanuel, Cynthia Montalvan, and Susan Styer ("Movant") for Transfer and Centralization, filed on August 29, 2025 (ECF No. 1). The Air France Plaintiffs take no position as to the transfer of Salesforce cases but oppose transfer and centralization of this action against Air France.

Transfer and centralization of the Air France Plaintiffs' action is not appropriate here. There is only one action that has been filed against Air France, and thus there are no efficiencies to be gained by transfer and centralization of this single case, which does not name Salesforce as a defendant. Moreover, given the early stage of the Air France action and the actions against Salesforce, the petition to include the Air France Action in the Salesforce MDL was not based— and could not be based—on a developed factual record and no showing has been made that this transfer would serve judicial efficiency or otherwise benefit the parties. Most importantly, the litigation against Air France is primarily focused on Air France's actions and inactions related to

its data breach—not Salesforce. Moreover, as Air France is headquartered in and routinely conducts business in New York, and on information and belief, the acts giving rise to the Air France Plaintiffs' claims occurred in New York. The New York court should not be divested of the right to control the litigation in this case, which will be focused on discovery of, and conduct in, New York. For these reasons, consolidation of the Air France Action is not appropriate.

## I.    FACTS

On or around May 29, 2025, Air France experienced a data breach event. Cybercriminals infiltrated Air France's network and accessed the private information of the Air France Plaintiffs many other individuals.

The Air France Plaintiffs filed their complaint in New York federal court on September 3, 2025, and it On August 28, 2025. No other cases have been filed against Air France, and the Air France action does not name Salesforce as a defendant. This suggests a lack of connection to Salesforce and the intention of the Air France Plaintiffs and their counsel to litigate against Air France issue separately from Salesforce, regardless of the modality of the data breach event.

On August 27 and 29, 2025, Movant filed class action complaints in the Northern District of California alleging claims against Salesforce arising from the Salesforce data breach. Before a factual record could be developed, on August 29, 2025, Movant filed a Motion for Transfer and Centralization to the Northern District of California ("MDL Motion"). By its terms, the MDL Motion originally sought to consolidate and transfer 48 cases with claims against Salesforce and its clients (including, Farmers Insurance, Allianz Life Insurance, Christian Dior, Louis Vitton, TransUnion). MDL Motion, ECF No. 1 at 1. Subsequent filings by the Movant have sought to sweep additional cases, including the Air France Action, into a proposed sprawling MDL to include every customer of Salesforces' software that suffered a data breach. Notice of Related

Actions, ECF No. 8; Notice of Related Actions, ECF No. 13; Notice of Related Actions, ECF No. 61.

## II.    LEGAL STANDARD

Federal civil actions are eligible for transfer pursuant to 28 U.S.C. § 1407 if they involve "common questions of fact" subject to discovery. *See* 28 U.S.C. § 1407(a); *In re Kugel Mesh Hernia Patch Prods. Liab. Litig.*, 493 F. Supp. 2d 1371, 1372-73 (J.P.M.L. 2007). A party moving to centralize cases into a multidistrict litigation bears "a heavy burden" to establish that a transfer is justified under 28 U.S.C. § 1407. *In re 21st Century Prods., Inc. "Thrilsphere" Contract Litig.*, 448 F. Supp. 271, 273 (J.P.M.L. 1978). The Panel generally considers four factors in deciding whether to transfer a case under 28 U.S.C. § 1407: (a) the elimination of duplication in discovery; (b) the avoidance of conflicting rules and schedules; (c) the reduction of litigation cost; and (d) the conservation of the time and effort of the parties, attorneys, witnesses and courts. *See, e.g.*, *In re Plumbing Fixture Cases*, 298 F.Supp. 484 (J.P.M.L. 1968). Where the evidentiary needs of some actions fundamentally differ from others, transfer and centralization will not promote efficiency. *See In re Comcast Corp. Emp. Wage & Hour Empl. Pracs. Litig.*, 190 F. Supp. 3d 1344, 1345 (J.P.M.L. 2016) ("Despite the factual commonality among the actions, we are not convinced that centralization is necessary to ensure the efficient conduct of these cases.").

## III.    ARGUMENT

The MDL Motion requests that cases with no demonstrable shared material facts are at issue. Salesforce's actions and omissions are separate from the actions and omissions alleged against Air France, regardless of the fact that a Salesforce platform (operated by Air France) was affected in the data breach event. These are two separate companies, and, therefore, undoubtedly made independent decisions with regard to each of the issues relevant to these litigations.

None of the factors the Panel typically considers support centralization of the Air France action. The Air France case only name Air France and will focus on Air France's duty to its customers to protect sensitive private personal information, Air France's data privacy processes and procedures, Air France's failure to detect the data breach, Air France's failure to prevent or minimize the scope of the data breach, Air France's response to the data breach after discovering it, the steps Air France took to mitigate the damage, the value of the information of Air France's customers exfiltrated during the breach and the facts surrounding Air France's eventual transmission of notice of the data breach to impacted individuals. Each of these issues are unique to Air France alone, and do not directly involve the MDL Defendants. The only shared fact between the Air France action and the other actions naming the MDL Defendants is the hackers' exploitation of Salesforce, Inc. which, standing alone, falls far short of satisfying the "heavy burden" of warranting centralization.

The situation presented here is almost identical to the Accellion data breach MDL, in which the Panel denied transfer and centralization. *See In re Accellion, Inc., Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 1372 ("Accellion MDL"). Like here, the Accellion MDL involved a situation where one company's (Accellion) software (like Salesforce) was exploited in a data breach that impacted many other companies that used Accellion's service. Multiple class action lawsuits were filed against Accellion, as well as those other companies that used its service.[1] In denying consolidation, the Panel reasoned as follows:

> [A]ny factual overlap among the actions as to Accellion's product, its vulnerability
> to attack, and its alleged support of this "legacy" product may be eclipsed by factual
> issues specific to each [Accellion]-client defendant. Opponents of centralization

---

[1] Specifically, as the Panel summarized: "Of the 26 actions and potential tag-along actions now pending, nine name only Accellion as the defendant, ten name only one Accellion client, and seven are multi-defendant actions naming Accellion and one of its clients." *Id.* at 1373. Here, Salesforce is not a named defendant in the Air France action.

argue that, rather than a single data breach, there were numerous data breaches of each client defendant, occurring at different times and involving each client defendant's own servers. . . . Other unique factual issues include when each [Accellion]-client was made aware of a data breach and when it notified its customers and/or employees.

*Id.* at 1374.

Many of the same facts that the Panel found dispositive in Accellion are present here: (1) there were numerous data breaches at different times of each Salesforce customer such as Air France; (2) Air France's vulnerability to the data breach is entirely unique from that of other impacted companies and the MDL Defendants; (3) when Air France was made aware of the data breach is unique to Air France; (4) what Air France did to investigate, mitigate and respond to the data breach is completely unique to Air France; and (5) when, why and how Air France chose to notify impacted individuals is unique from other impacted companies and the MDL Defendants.

Moreover, the mere fact that Air France used Salesforce does not create any efficiency to be gained by transferring under § 1407. Even if the Air France Plaintiffs need some discovery from Salesforce, as in Accellion, such discovery could be informally coordinated. *Accellion*, 543 F. Supp. 3d at 1374 ("Proponents of centralization argue that even in the actions in which Accellion is not named, it will be involved in some third-party discovery. But we are persuaded that such discovery can be informally coordinated."). The far more time-consuming, and important discovery will be that which the Air France Plaintiffs seek from Air France, namely depositions of Air France executives and employees, including cybersecurity officers, those in charge of protecting the class's private data and those with knowledge of Air France's alleged lack of training of its workforce and cyber security policies. Most of which are likely situated in New York at Air France's U.S. headquarters. Litigating unrelated claims against potentially hundreds of varying defendants that happened to use the Salesforce software in one consolidated action will

create significant inefficiencies as the transferee court and the parties will constantly have to sort out which issues overlap and which do not. It will also multiply the parties and counsel involved in a manner that is contrary to the goals of centralization. *See In re Accellion*, 543 F. Supp. 3d at 1374; *see also In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351 (J.P.M.L. 2012) (denying motion to centralize all actions involving fentanyl patches irrespective of manufacturer as each case "will involve unique. . . defendant-specific issues . . . that will overwhelm the few common issues"); *In re Yellow Brass Plumbing Component Prods. Liab. Litig.*, 844 F. Supp. 2d 1377, 1378 (J.P.M.L. 2012) (denying centralization of 13 product liability actions involving different plumbing products, stating that "we are typically hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured and sold similar products").

Furthermore, the Panel has consistently explained its "usual reluctance to centralize actions against different defendants in one MDL," because "a multi-defendant MDL may prolong pretrial proceedings, because of, *inter alia*, the possible need for separate discovery and motion tracks, as well as the need for additional bellwether trials." *In re CP4 Fuel Pump Mktg. Sales Pract., & Prods. Liab. Litig.*, 412 F. Supp. 3d 1365, 1367 (J.P.M.L. 2019) (denying motion to centralize ten single-defendant cases). The fact that some of the non-MDL Defendant companies may be competitors (e.g., insurance companies, fashion companies, and other businesses) also militates against centralization in one case, as it would create unmanageable confidentiality issues in discovery. As the Panel has previously recognized, "centralizing competing defendants in the same MDL likely would complicate case management due to the need to protect trade secrets and confidential information." *Id.*

Finally, the lack of common defendants weighs against centralization. *In re Reglan/Metoclopramide Prods. Liab. Litig.*, 622 F. Supp. 2d 1380, 1381 (J.P.M.L. 2009) (denying centralization motion where there was no common defendant and there were alternatives to transfer). Here, that Salesforce is not a named defendant in the Air France action weights against centralization and demonstrates a lack of commonality in terms of factual and legal issues among the cases.

In short, there is no basis to centralize the Air France case into a broad MDL involving potentially hundreds of defendants simply because they all happened to use the same software. The MDL Motion should therefore be denied.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs Ethan Allison and Arya Soofiana respectfully request the Court deny transferring and centralizing the Air France action into a massive Salesforce MDL.

Dated: September 24, 2025          By: */s/ Raina C. Borrelli*
Raina C. Borrelli
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com

*Counsel for Plaintiffs Ethan Allison and Arya Soofiana*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that, on September 24, 2025, the foregoing document was filed via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record. The same was further served on the Defendant via U.S. mail at:

> Air France
> 125 W 55th St., Floor 2
> New York, NY 10019

DATED this 24th day of September, 2025.

> STRAUSS BORRELLI PLLC
>
> By: */s/ Raina C. Borrelli*
> Raina C. Borrelli
> raina@straussborrelli.com
> STRAUSS BORRELLI PLLC
> One Magnificent Mile
> 980 N Michigan Avenue, Suite 1610
> Chicago IL, 60611
> Telephone: (872) 263-1100
> Facsimile: (872) 263-1109