**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: SALESFORCE, INC. DATA SECURITY BREACH LITIGATION | MDL No. 3164 |

**DEFENDANTS TRANS UNION, LLC'S AND TRANSUNION'S RESPONSE IN
OPPOSITION TO MOTION OF PLAINTIFFS MALCOLM SCOTT, ZENAIDA
MEDINA, ELIOT CANICK, DWHITNEY EMANUEL, CYNTHIA MONTALVAN,
AND SUSAN STYER FOR TRANSFER AND CENTRALIZATION
<u>PURSUANT TO 28 U.S.C. § 1407</u>**

Defendants Trans Union, LLC and TransUnion (collectively, "TransUnion") submit this

Response in Opposition to the Motion of Plaintiffs Malcolm Scott, Zenaida Medina, Eliot

Canick, Dwhitney Emanuel, Cynthia Montalvan, and Susan Styer (together, "Movants") for

Transfer and Centralization Pursuant to 28 U.S.C. § 1407 (the "Motion").

**PRELIMINARY STATEMENT**

This litigation arises from a series of distinct data incidents affecting several unrelated

companies, each of which used Salesforce software in the ordinary course of their

business. Movants seek to centralize these actions in a single MDL in the Northern District of

California, premised on the theory that the incidents involved Salesforce as a common "hub" (the

"Actions"). That premise is fundamentally flawed. The record demonstrates that each

defendant—TransUnion, Allianz Life Insurance, Farmers Insurance Exchange and/or Farmers

Group ("Farmers"), Christian Dior, Louis Vuitton, and others—experienced its own, separate

data incident, at different times, through different vectors, and involving different data.[1] Notably,

---

[1] Although the data incident that affected TransUnion is separate from the data incidents
suffered by other defendants allegedly through the Salesforce software, TransUnion is

*(cont'd)*

Salesforce did not report an independent breach of its systems during the relevant time period, and the complaints against Salesforce are largely derivative of incidents reported by its customers. The absence of a unifying breach or method of compromise at Salesforce distinguishes this litigation from the "hub-and-spoke" data breach cases on which Movants rely, where centralization was justified by a single compromised vendor whose security failure propagated across its client base.

The statutory criteria for centralization under 28 U.S.C. § 1407 are not met here. The Actions do not present common questions of fact or law sufficient to warrant consolidation, as each defendant's liability will turn on individualized inquiries into its own security practices, incident response, and the specific circumstances of its data event. The factual overlap among the Actions is eclipsed by the unique issues presented by each defendant's experience, as recognized by the Panel in analogous cases. Centralization would not serve the convenience of the parties and witnesses, nor would it promote the just and efficient conduct of the litigation. To the contrary, in addition to TransUnion, other plaintiffs also oppose centralization of their cases in a single MDL. The Actions are largely pending in the jurisdictions where each defendant is headquartered and where the relevant evidence and witnesses are located.

Indeed, TransUnion has sought centralization of the Actions against it in the Northern District of Illinois, where the majority of those cases are already pending and where TransUnion is headquartered. Movants' attempt to force all actions into a single forum, over objections of plaintiffs and defendants alike, would only serve to complicate and delay resolution, rather than advance the interests of justice. The Panel should deny Movants' motion for centralization in the

---

investigating whether and to what extent Salesforce's security measures and practices contributed to the data incident affecting TransUnion.

Northern District of California.

**BACKGROUND**

I.      **DATA INCIDENTS AT ISSUE.**

TransUnion is one of the leading credit reporting agencies and is headquartered in Chicago, Illinois. On July 28 and 29, 2025, TransUnion experienced a data incident via a social engineering attack whereby threat actors posed as help desk technicians to gain limited access to a discrete segment of the company's Salesforce environment (the "Data Incident").[2] Upon discovery, TransUnion contained the threat actor's ability to access the Salesforce environment, initiated an investigation involving third-party experts, and reported the incident to law enforcement. The unauthorized access was limited to the Salesforce environment and did not involve access to any credit databases. The threat actor was able, however, to access personal information certain consumers provided to TransUnion. On August 26, 2025, after undertaking a comprehensive review of the affected data, TransUnion began sending formal notices to affected individuals.

Throughout the summer, other defendant companies such as Allianz Life Insurance, Farmers Insurance, and Christian Dior separately reported data incidents occurring on different dates and times. Salesforce, however, did not report a data incident affecting its platform during this time period. Salesloft, a separate company that provides a product called Salesloft Drift that integrates with Salesforce, issued a security notification in August 2025 about a security issue specifically in the Salesloft Drift application. As explained below, TransUnion's incident did not involve the Salesloft Drift security issue. Additionally, the data incidents allegedly affecting

---

[2]      Salesforce provides a third-party application that supports TransUnion's U.S. consumer-support operations.

other defendants are distinct from the social engineering attack TransUnion experienced which is at issue in the specific actions brought against TransUnion.

## II.     PROCEDURAL HISTORY.

As of the date of this filing, 55 cases are currently pending against TransUnion. The majority of the cases pending against TransUnion—43 cases—are in the Northern District of Illinois.[3] The other cases naming TransUnion are pending across districts—one in the Northern District of Florida, one in Florida state court, one in the Eastern District of Pennsylvania, one in the Central District of California, and eight in the Northern District of California.[4]

The day after the first complaints against TransUnion were filed, Movants filed the present Motion seeking to transfer to the Northern District of California 48 then-filed and any tag-along actions relating to the data incidents involving Salesforce. Prior to the Motion being filed, no complaints had named TransUnion together with any other defendant, including Salesforce. Rather, it was only after the Motion was filed suggesting that all the cases against different defendants belong together that plaintiffs began to file complaints naming both TransUnion and other defendants.[5] Of the numerous pending cases, TransUnion is only aware of three cases asserting claims against more than two defendants.[6] In sum, there are

---

[3]     A full list of pending cases against TransUnion is included in the schedule attached as Exhibit A.

[4]     *See* Exhibit A.

[5]     The first complaint against TransUnion and another defendant, Salesforce, was filed a week after the Motion filing. *See King v. Salesforce, Inc., and TransUnion, LLC*, No. 3:25-cv-07507-JSC (N.D. Cal. filed Sept. 4, 2025).

[6]     The cases of which TransUnion is aware that name three or more defendants are *Canick v. Salesforce, Inc. et al.*, No. 3:25-cv-07306-JSC (N.D. Cal. filed Aug. 29, 2025) (naming Salesforce, Allianz, and Farmers); *Acosta v. Salesforce, Inc. et al.*, No. 3:25-cv-07888-JSC (N.D. Cal. filed Sept. 16, 2025) (naming Salesforce, Allianz, Farmers, TransUnion and Does 1-100); and *Yadav v. Salesforce, Inc. et al.*, No. 3:25-cv-07847-JSC (N.D. Cal. filed Sept. 15, 2025) (naming Salesforce, Farmers, TransUnion, Workday Inc., and Pandora entities).

- 42 cases against TransUnion only in the Northern District of Illinois (where TransUnion is headquartered); one case against TransUnion only in the Northern District of California; one case against TransUnion and Salesforce in the Northern District of Illinois; five cases against TransUnion and Salesforce in the Northern District of California (where Salesforce is headquartered); two cases against TransUnion, Salesforce, and other defendants in the Northern District of California; one case against TransUnion only in the Eastern District of Pennsylvania; one case against TransUnion and Salesforce in the Central District of California; one case against TransUnion only in the Northern District of Florida; and one case seeking only individual relief in Florida state court;

- Six cases against Salesforce only in the Northern District of California (where Salesforce is headquartered);

- 33 cases against Allianz Life Insurance Company of North America only in the District of Minnesota (where Allianz is headquartered);

- Six cases against Christian Dior, Inc. only in the Southern District of New York (where Christian Dior is headquartered);

- Five cases against Louis Vuitton North America, Inc., only in the Southern District of New York (where Louis Vuitton is headquartered); and

- 11 cases against Farmers only are pending in the Central District of California (where Farmers is headquartered).

The majority of cases against these defendants and others are concentrated in the jurisdictions in which each defendant is headquartered. The cases pending against Christian Dior and Louis Vuitton are primarily in the Southern District of New York, for example, while the cases against Farmers are primarily pending in the Central District of California and the cases against Allianz are pending in the District of Minnesota.

## ARGUMENT

Movants' effort to sweep these disparate actions into a single MDL rests on a fundamental misapprehension of the facts and the governing law. The notion that a solitary data incident involving Salesforce unites the claims against at least six distinct defendants is simply incorrect. Each defendant—whether TransUnion, Allianz, Farmers, Christian Dior, Louis Vuitton, or others—experienced a separate and independent data breach, each marked by its own

facts, circumstances, and timelines. The mere fact that these incidents involved the Salesforce platform does not transform them into a common nucleus of operative fact warranting centralization. To the contrary, centralization in these circumstances would undermine, not advance, the efficiency and fairness that Section 1407 is designed to promote.

There are, moreover, far more tailored and effective alternatives to the sweeping hub-and-spoke MDL Movants propose. TransUnion has filed an MDL petition seeking centralization of the Actions against it in the Northern District of Illinois, where it is headquartered and where the overwhelming majority of related cases are already pending.[7] This approach would ensure that discovery, motion practice, and pretrial proceedings are focused where the relevant witnesses and evidence reside, and where the interests of justice and convenience are best served.

## I.    THE ACTIONS ARE NOT SUITED FOR TRANSFER AND COORDINATION IN A HUB-AND-SPOKE MDL PURSUANT TO 28 U.S.C. § 1407.

The Panel may transfer civil actions under Section 1407 for consolidation if the actions "involve one or more common questions of fact," and only if the Panel determines the transfer "would serve 'the convenience of parties and witnesses' and that it will 'promote the just and efficient conduct of such actions.'" *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 712 F. Supp. 3d 1394, 1395-96 (J.P.M.L. 2024) (quoting 28 U.S.C. § 1407). No party is entitled to centralization as a matter of right, but such determination is made "on a case-by-case basis considering the statutory criteria." *Id.* at 1396. Movants cannot make this showing.

---

[7]    Today, TransUnion filed a motion and memorandum in support of transfer and centralization of the cases pending against TransUnion in the Northern District of Illinois ("Petition"). *See* Motion of Defendants Trans Union, LLC and TransUnion for Transfer and Centralization Pursuant to 28 U.S.C. § 1407, *In re Trans Union LLC Data Sec. Breach Litig.*, MDL No. [pending] (J.P.M.L. filed Oct. 3, 2025), Dkt. No. 1; Memorandum in Support of Motion of Defendants Trans Union, LLC and TransUnion for Transfer and Centralization Pursuant to 28 U.S.C. § 1407, MDL No. [pending] (J.P.M.L. filed Oct. 3, 2025), Dkt. No. 1-1.

**A.    The Actions Do Not Share Common Factual or Legal Issues Because the Actions Involve Several Distinct Data Incidents Affecting Different Defendants.**

Movants seek transfer and centralization of what they claim are all the cases "arising out of the 'hub and spoke' data breach impacting Salesforce . . . and its clients." Mot. at 1. Indeed, Movants attempt to argue that the Actions involve common, numerous and complex questions of fact because all actions "arise out of and seek to hold Salesforce and its corporate clients responsible for the same Data Breach." Memorandum in Support of Motion of Plaintiffs Malcolm Scott et al. for Transfer and Centralization Pursuant to 28 U.S.C. § 1407 at 8 (filed Aug. 29, 2025), Dkt. 1-1 ("Mem."). But Movants' motion rests on a false premise. The Actions do not arise from the *same data incident*, but *multiple data incidents* occurring at different organizations, at different times, involving different data, across multiple industries. While Movants appear to allege that Salesforce software was involved in each of the defendant's data incidents, this fact alone, even if true, fails to establish sufficient commonality or shared fact and law issues across the Actions to justify centralization.

As is evident from the sources cited by the complaints and media coverage around these incidents, defendants suffered from *distinct* incidents that occurred on *different* dates and times. This alone belies any notion that all of the incidents at defendants arose from the same "hub" data event. TransUnion experienced a Data Incident on **July 28 and 29, 2025**. The data incident notice sent by Farmers that several complaints cite, however, noted Farmers was alerted to suspicious activity involving an unauthorized actor on **May 30, 2025**, through a third-party vendor, and that it had determined certain individuals' personal information was subject to unauthorized access on **July 24, 2025**. *See, e.g.*, Complaint ¶ 6 n.2, *Medina v. Salesforce, Inc. and Farmers Grp., Inc.*, No. 3:25-cv-07245-JSC (N.D. Cal. filed Aug. 27, 2025), Dkt. No. 1. Meanwhile, complaints against Christian Dior reference a notice letter that describes a potential

cybersecurity incident identified nearly a month earlier, on **May 7, 2025**. *See* Complaint ¶ 4 & n.1, *Toikach v. Christian Dior, Inc.*, No. 1:25-cv-06055-JAV (S.D.N.Y. filed July 25, 2025), Dkt. No. 6. Complaints against Allianz allege that an unauthorized third-party gained access to Allianz's cloud-based Customer Relationship Management ("CRM") on or around **July 16, 2025** (*see, e.g.*, Complaint ¶ 5, *Giuliani v. Allianz Life Ins. Co. of N. Am.*, No. 0:25-cv-03291-KMM-JFD (D. Minn. filed Aug. 18, 2025), Dkt. No. 1), and complaints against Louis Vuitton allege that it experienced a data incident on **June 6, 2025** (*see, e.g.*, Complaint ¶ 3, *Moran v. Louis Vuitton N. Am., Inc.*, No. 1:25-cv-07241-AT (S.D.N.Y. filed Aug. 29, 2025), Dkt. No. 1). The notice letters upon which the allegations draw clearly describe distinct data incidents because the incidents all occurred on different days and times at different companies.

Noticeably absent from the complaints are allegations that Salesforce—the supposed "hub" of the data incidents—was breached through a single security vulnerability. In fact, many of the complaints against *Salesforce only* rely on allegations concerning the incidents experienced and reported by *other defendants* that used Salesforce's software. *See generally, e.g.*, Complaint ¶ 3 & n.1, *Holland v. Salesforce, Inc.*, No. 3:25-cv-07383-JSC (N.D. Cal. filed Sept. 2, 2025), Dkt. No. 1 (citing to alleged data breach notification issued by Christian Dior dated July 18, 2025); *id.* Ex. A at 2, Dkt. No. 1-1 (alleged Christian Dior data breach notice letter).

Movants' reliance on prior Panel decisions centralizing so-called "hub-and-spoke" data incident cases is misplaced. In the hub-and-spoke cases they cite, centralization was predicated on the existence of a single, identifiable breach of a defendant's system—the "hub"—which resulted in unauthorized access to the personally identifiable information of that defendant's customers—the "spokes." For example, in *In re Fortra File Transfer Software Data Security*

*Breach Litigation*, 717 F. Supp. 3d 1378, 1379 (J.P.M.L. 2024), the Panel centralized actions "arising from the January 2023 breach of defendant Fortra's 'GoAnywhere' managed file transfer software," where a Russian-linked ransomware group exploited a zero-day vulnerability in the hub software to access customer data. Similarly, in *In re MOVEit Customer Data Security Breach Litigation*, 699 F. Supp. 3d 1402, 1405 (J.P.M.L. 2023), centralization was granted because "a vulnerability" in Progress Software Company's MOVEit platform—the hub—was exploited, compromising the data of over 55 million individuals. The Panel's orders in *In re Perry Johnson & Associates Medical Transcription Data Security Breach Litigation*, 717 F. Supp. 3d 1357, 1359 (J.P.M.L. 2024), and *In re AT&T Inc. Cellular Customer Data Security Breach Litigation*, 753 F. Supp. 3d 1368, 1369 (J.P.M.L. 2024), followed the same logic: each involved a discrete breach of a central defendant's system, with downstream effects on customers or clients who relied on that system.[8] In such a situation, factual questions such as "how the [hub defendant's] vulnerability occurred, the unauthorized access and data exfiltration, and [the hub defendant's] response to it," are relevant to *all* spoke-defendants because these questions "impact[] all the various downstream defendant *users* of the file transfer software and individual plaintiffs." *In re Fortra*, 717 F. Supp. 3d at 1379.

---

[8]     Movants also cite to the Transfer Orders centralizing the Evolve and PowerSchool data breach actions. *See* Mem. at 3. However, the data breaches at issue in those cases were not hub-and-spoke data breaches; only a single defendant—not a hub defendant and multiple spoke-defendants—was involved in the actions subject to the centralization order. *See In re Evolve Bank & Tr. Customer Data Sec. Breach Litig.*, 753 F. Supp. 3d 1377, 1378 (J.P.M.L. 2024) (centralizing 22 cases alleging a data breach against a single defendant); *In re PowerSchool Holdings, Inc., & PowerSchool Grp., LLC Customer Data Sec. Breach Litig.*, 780 F. Supp. 3d 1352, 1354 (J.P.M.L. 2025) (granting motion for centralization where data breach actions were filed against a single defendant). Those cases do not support Movants' argument for centralizing hub-and-spoke data breach cases, but rather show that centralization is appropriate where there are multiple cases pending against one defendant arising from the same data breach. These cases support centralization of the cases against TransUnion as a defendant which allege injuries resulting from the same Data Incident. *See supra* Section II.

No such centralized data event exists here. As noted above, the allegations as to the incidents experienced by each supposed "spoke" defendant involved unauthorized access to their individual third-party platform on different dates and through unique means. Discovery into the issues here will not be streamlined by combining all defendants with Salesforce because there will be no central repository of facts about "how the [hub defendant's] vulnerability occurred," *In re Fortra*, 717 F. Supp. 3d at 1379, that will be relevant to all defendant-customers of Salesforce. Determining liability will require an individualized inquiry into the facts of each incident, including the specific security measures each defendant implemented, the manner in which the breach occurred, and each defendant's practices regarding data protection. The mere fact that the defendants may have been targeted by the same threat actor or that Salesforce software was involved does not create the commonality required for centralization.

*In re Accellion, Inc., Customer Data Security Breach Litigation*, 543 F. Supp. 3d 1372 (J.P.M.L. 2021) is illustrative. There, the plaintiff sought multi-defendant centralization of 26 actions brought against four companies, based on the common allegation that the cases involved a data breach of one of the defendant's (Accellion's) File Transfer Application ("FTA"). *Id*. at 1373. The Panel denied centralization because the individualized issues "eclipsed" the common factual overlap:

> Additionally, any factual overlap among the actions as to Accellion's FTA product, its vulnerability to attack, and its alleged support of this "legacy" product may be eclipsed by factual issues specific to each client defendant. Opponents of centralization argue that, rather than a single data breach, there were numerous data breaches of each client defendant, occurring at different times and involving each client defendant's own servers. Moreover, each client defendant's knowledge of the FTA's alleged vulnerability to attack will be unique, as will Accellion's alleged efforts to urge each client to migrate to its newer file sharing product. Other unique factual issues include when each client was made aware of a data breach and when it notified its customers and/or employees.

*Id.* at 1374. That same rationale applies here, where the common factual allegations regarding Salesforce are "eclipsed" by the disparate factual circumstances of each defendant's data incident. *Id.*; *see also In re CP4 Fuel Pump Mktg., Sales Pracs., & Prods. Liab. Litig.*, 412 F. Supp. 3d 1365, 1366-67 (J.P.M.L. 2019) (denying multi-defendant centralization of 10 actions brought against three automobile manufacturers, based upon the common allegation that a Bosch-supplied fuel pump used in each manufacturer's vehicles was defective, concluding that "these cases also present numerous automaker-specific and plaintiff-specific issues"); *In re Baby Food Mktg., Sales Pracs. & Prods. Liab. Litig.*, 544 F. Supp. 3d 1375, 1376 (J.P.M.L. 2021) (similar, denying centralization request because "[t]he claims against each defendant thus are likely to rise or fall on facts specific to that defendant").

Indeed, several complaints against Salesforce contain allegations regarding Salesloft Drift, alleging that threat actors targeted Salesforce customers via the Salesloft Drift third-party application that integrates with Salesforce. *See, e.g.*, *Holland* Complaint ¶ 32; Complaint ¶¶ 31-32, *Johnson v. Salesforce, Inc.*, No. 3:25-cv-08011-TSH (N.D. Cal. filed Sept. 19, 2025), Dkt. No. 1. Yet those allegations are specific to Salesforce and do not create common issues of fact or law among all defendants. At least as to TransUnion, the incident did not involve Salesloft Drift, which only underscores why the relevant facts here are specific to each defendant and do not form the basis for a common nucleus of operative facts.[9]

---

[9]      On August 20, 2025, Salesloft published a security notification on its website stating, "**Today**, we detected a security issue in the Drift application. Out of an abundance of caution, we have proactively revoked connections between Drift and Salesforce, and we are asking Drift admins to re-authenticate their Salesforce connection." Drift/Salesforce Security Notification, available at https://trust.salesloft.com/?uid=Drift%2FSalesforce+Security+Notification (emphasis added).

**B.      Transfer and Centralization Will Not Further the Convenience of the Parties and Witnesses or Promote Just and Efficient Conduct of the Actions.**

Centralization is warranted only when it "serve[s] the convenience of the parties and witnesses and promote[s] the just and efficient conduct of [the] litigation." *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 626 F. Supp. 2d 1348, 1348 (J.P.M.L. 2009). The purpose of centralization is to eliminate "duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save time and effort of the parties, the attorneys, the witnesses, and the courts." *Manual for Complex Litigation* § 20.131 (4th ed. 2004).

Movants' proposal to coordinate and transfer all related actions to the Northern District of California, where Salesforce is based, does not serve the interests of parties and witnesses in cases against other defendants. Most of the "spoke" defendants are headquartered elsewhere, and the relevant parties and witnesses for each data incident are located in those respective jurisdictions. As to TransUnion, discovery and litigation will proceed most efficiently and with the participation of the appropriate individuals if the Actions are centralized in one MDL in the Northern District of Illinois.

Moreover, in the Actions pending in the Northern District of California that primarily concern Salesforce, TransUnion is not a necessary party for discovery purposes. The claims against Salesforce in those cases do not depend on information about TransUnion's practices or systems. Therefore, transferring or coordinating all cases in a single district would not promote justice or efficiency, but rather could complicate proceedings and impose unnecessary burdens on parties and witnesses who are not connected to the Salesforce-specific allegations. This further demonstrates that centralization is not appropriate under these circumstances.

In addition, centralization is unwarranted where a motion lacks support from responding parties. *See, e.g.*, *In re Boehringer Ingelheim Pharms., Inc. Fair Labor Standards Act (FLSA)*

*Litig.*, 763 F. Supp. 2d 1377, 1378 (J.P.M.L. 2011) (noting that centralization is "less compelling" when "defendants and/or some of the plaintiffs oppose centralization"). Here, other parties, including plaintiffs associated with at least two of the pending cases against TransUnion, have opposed centralization of the cases against TransUnion. *See, e.g.*, Plaintiffs Daniel Snelgrove et al.'s. and Tina Ihrke et al.'s Response in Opposition to Motion for Transfer and Centralization Pursuant to 28 U.S.C. § 1407 (filed Sept. 24, 2025), Dkt. No. 70.[10]

This preference to litigate separately in the districts where the defendants are headquartered is both logical and efficient, as the place of defendants' headquarters is where relevant witnesses and records are likely to be found. Centralization in a hub-and-spoke MDL, on the other hand, would allow a few plaintiffs and their shared counsel to commandeer all other actions for their own benefit. *See In re CVS Caremark Corp. Wage & Hour Emp. Pracs. Litig.*, 684 F. Supp. 2d 1377, 1379 (J.P.M.L. 2010) (noting that "where a Section 1407 motion appears intended to further the interests of particular counsel more than those of the statute," the Panel "would certainly find less favor with it"). The Panel should not countenance this tactic particularly where a defendant-specific MDL, at least as to TransUnion, would streamline proceedings, and promote efficiency and just outcomes.

In sum, transfer and centralization of all Actions in the Northern District of California is not warranted because the Actions do not arise from the same set of facts and can be largely organized around each defendant in districts convenient to the parties. Because Plaintiffs fail to

---

[10]     In addition to plaintiffs in *Snelgrove* and *Ihrke*, plaintiffs in *Allison v. Air France*, No. 1:25-cv-07634-JGK (S.D.N.Y. filed Sept. 3, 2025) have also opposed consolidation of their case in the Northern District of California. *See* Plaintiffs Ethan Allison and Arya Soofiana's Response in Opposition to Motion for Transfer and Centralization Pursuant to 28 U.S.C. § 1407 (filed Sept. 24, 2025), Dkt. No. 71.

show centralization in a hub-and-spoke MDL with Salesforce and other defendants is necessary for the convenience of the parties and their witnesses, the Panel should deny the Motion.

## II.    THE CASES AGAINST TRANSUNION SHOULD BE TRANSFERRED AND CENTRALIZED AS AN MDL IN THE NORTHERN DISTRICT OF ILLINOIS TO BETTER PROMOTE THE JUST AND EFFICIENT CONDUCT OF THE ACTIONS.

As addressed above, centralizing all cases, including those against TransUnion, in the hub-and-spoke MDL proposed by Movants is illogical and unwarranted. Rather, as is further expounded in TransUnion's Petition, the cases against TransUnion stemming from the Data Incident ("TransUnion Actions") should be transferred and centralized in the Northern District of Illinois, the natural and logical forum where TransUnion is headquartered and where a majority of the cases against it are currently pending. Centralization of the Actions against TransUnion is appropriate because: (1) the TransUnion Actions all involve common questions of fact concerning the Data Incident; (2) transfer will promote the just and efficient conduct of the TransUnion Actions by avoiding duplicative discovery and inconsistent rulings from multiple judges on discovery disputes and dispositive motions; and (3) a TransUnion-specific MDL will serve the convenience of the parties. Given the number of pending cases, informal coordination is not practicable and transfer and centralization of the TransUnion-specific cases is a far preferable means of promoting judicial efficiency.

*First*, centralization of the TransUnion Actions is warranted because these cases all involve common questions of fact. Indeed, the Panel routinely grants centralization of cases involving the same data incident experienced by a common defendant. *See, e.g.*, *In re 23andMe, Inc., Customer Data Sec. Breach Litig.*, 730 F. Supp. 3d 1352, 1353 (J.P.M.L. 2024) (centralizing 31 actions pending in three districts against a genetic analysis company and its affiliates because "actions share common questions of fact arising from allegations that 23andMe

failed to take adequate measures to prevent and mitigate the consequences of a 2023 data

security breach that compromised the personally identifiable and genetic information of some

seven million 23andMe customers"). The 54 federal complaints naming TransUnion as a

defendant are brought by consumers who allege substantially identical facts concerning the same

Data Incident that TransUnion experienced. The TransUnion Actions involve substantially

identical legal theories arising from the same alleged facts surrounding the Data Incident—i.e.,

an unauthorized actor's alleged access to certain information provided by consumers to

TransUnion—and all involve the same putative nationwide class and/or California subclass of

persons. The complaints raise common factual questions, including: (i) the nature of the social

engineering attack that caused the cybersecurity incident; (ii) the types of information allegedly

compromised in the incident; (iii) the adequacy of TransUnion's data security practices; and (iv)

TransUnion's response to the incident. *See In re Blackbaud, Inc., Customer Data Sec. Breach

Litig.*, 509 F. Supp. 3d 1362, 1363-64 (J.P.M.L. 2020) (granting motion to transfer and

centralization in data incident involving one "[c]ommon defendant" with common factual

questions).[11]

**Second**, transfer will also promote the just and efficient conduct of the TransUnion

Actions. TransUnion's headquarters is in Chicago, Illinois. Transfer will "eliminate duplicative

discovery" and "conserve the resources of the parties, their counsel, and the judiciary." *In re*

---

[11] There are nine actions naming TransUnion in addition to other defendants. As is further set forth in TransUnion's Petition, these cases do not weigh against creation of a TransUnion-specific MDL. The Panel "may separate any claim, cross-claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded." 28 U.S.C. § 1407(a); *see also In re Invokana (Canagliflozin) Prods. Liab. Litig.*, 223 F. Supp. 3d 1345 (J.P.M.L. 2016). The claims against other defendants in the Actions can be separated and remanded to their transferor courts, leaving the claims against TransUnion to proceed in the Northern District of Illinois.

*Target Corp. Customer Data Sec. Breach Litig.*, 11 F. Supp. 3d 1338, 1338-39 (J.P.M.L. 2014)
(transferring and centralizing 33 actions that all shared "factual questions arising from a data
security breach at stores owned and operated by Target"). Because the allegations and claims in
the Actions against TransUnion are all premised on the Data Incident, discovery in "all actions
will focus on" how the Data Incident occurred, "how and when the breach was identified, what
security measures [TransUnion] had in place, and what steps were taken after the data breach
was discovered." *In re 23andMe, Inc.*, 730 F. Supp. 3d at 1353. Here, any discovery relating to
the TransUnion Actions will likely require participation from TransUnion's Illinois-based
employees. As the parties will likely seek to depose the same witnesses, review identical
documents, negotiate the same protective orders, and assert overlapping privileges in each
proceeding, transfer and centralization will eliminate the parties' duplicative efforts and conserve
time and resources. Centralization will further promote consistent pretrial rulings, including with
respect to class certification. The cases are all in their infancy, and no discovery has yet been
sought or produced, further supporting centralization. *See In re Schnuck Mkts., Inc., Customer
Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379, 1381 (J.P.M.L. 2013) (concluding "centralization
is most appropriate now" at early stage of data breach litigation before "additional tag-along
actions also may be filed in this litigation").

 **Third**, centralization in a TransUnion-specific MDL will serve the convenience of the
parties. While the Panel has repeatedly expressed its "reluctance to centralize actions against
different defendants in one MDL," particularly where (like here), the cases present numerous
"[defendant]-specific and plaintiff-specific issues," *In re CP4 Fuel Pump Mktg., Sales Pracs., &
Prods. Liab. Litig.*, 412 F. Supp. 3d at 1366-67, the Panel has emphasized the superiority of
defendant-specific MDLs where there is a common factual thread. For example, in *In re National*

*Ski Pass Insurance Litigation*, 492 F. Supp. 3d 1352 (J.P.M.L. 2020), the Panel denied a motion to centralize seven actions pending against several different defendants, holding that "few efficiencies would be gained by creating an industry-wide MDL that combines claims against the USIC and Arch defendants," noting that the Panel views requests to centralize claims filed against "multiple" defendants "with a skeptical eye." *Id*. at 1353. The Panel "d[id] find merit however in the parties' request for the creation of defendant-specific MDLs" given that the defendant-specific MDLs would "eliminate duplicative discovery; avoid inconsistent pretrial rulings, particularly on class certification; and conserve the resources of the parties, their counsel and the judiciary." *Id*. a 1354. Likewise, in *In re Power Morcellator Products Liability Litigation*, 140 F. Supp. 3d 1351 (J.P.M.L. 2015), the Panel held that defendant-wide centralization was "not appropriate" because the "individual issues" in the claims against different defendants "will predominate over the common issues." *Id*. at 1353. Nevertheless, the Panel granted centralization for the cases involving one defendant, Ethicon, given that there were "now at least 28 actions naming Ethicon as a defendant." *Id*. The Panel took this approach in response to the numerous cases filed nationwide against various defendants alleging violations of the Home Affordable Modification Program, centralizing cases by defendant as opposed to creating a single, defendant-wide MDL. *See In re JPMorgan Chase Mortg. Modification Litig.*, 818 F. Supp. 2d 1378, 1379 (J.P.M.L. 2011); *In re CitiMortgage, Inc., Home Affordable Modification Program (HAMP) Cont. Litig.*, 816 F. Supp. 2d 1375, 1376 (J.P.M.L. 2011); *In re Bank of Am. Home Affordable Modification Program (HAMP) Cont. Litig.*, 746 F. Supp. 2d 1359, 1361 (J.P.M.L. 2010). Here, a TransUnion-specific MDL for the TransUnion Actions is superior to the defendant-wide MDL proposed in the Motion and, as detailed above, satisfies all of the factors under Section 1407.

17

Moreover, with 54 cases pending across five districts and more than 36 distinct groups of plaintiffs' firms involved, informal coordination would not be practical here. Instead, centralization of the TransUnion Actions is preferable and will allow the parties to efficiently manage coordination of discovery and other pretrial matters. *See, e.g.*, *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 65 F. Supp. 3d 1402, 1404 (J.P.M.L. 2014) (recognizing that effective informal coordination of discovery and pretrial matters was "not practicable" where there were "21 constituent actions and over 30 potential tag-along actions" and "two dozen involved plaintiffs' firms" with the "considerable growth in the litigation over the past few months").

Centralization of all cases in the Northern District of California is not appropriate for the reasons previously stated. Forcing these cases, over the objection of parties, to a jurisdiction convenient only to Salesforce and a few plaintiffs does not serve the convenience and efficiency purposes of Section 1407. However, transfer and centralization of the cases against TransUnion in the Northern District of Illinois would significantly promote the goals of Section 1407 by streamlining all pretrial proceedings and avoiding duplication of discovery efforts. *See In re Nat'l Ski Pass Ins. Litig.*, 492 F. Supp. 3d 1352.

## CONCLUSION

In their rush to seek centralization in the Northern District of California, Movants gloss over critical facts establishing that the data incidents at issue are distinct and lack a shared nucleus of facts, and fail to appreciate the inconvenience that centralization in the Northern District of California would pose to nearly all of the parties. For the reasons discussed above, the Panel should deny their Motion.

Dated: October 3, 2025

/s/ Michael W. McTigue Jr.
Michael W. McTigue Jr.
Meredith C. Slawe
**SKADDEN, ARPS, SLATE, MEAGHER**
  **& FLOM LLP**
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
michael.mctigue@skadden.com
meredith.slawe@skadden.com

William E. Ridgway
**SKADDEN, ARPS, SLATE, MEAGHER**
  **& FLOM LLP**
320 South Canal
Chicago, IL 60606
Telephone: (312) 407-0700
william.ridgway@skadden.com

*Counsel for Defendants Trans Union, LLC and*
*TransUnion*